UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RUFUS WEST,

                Plaintiff,

v.                                                Case No. 18-cv-1277-PP

CAPT. BAUMANN, CAPT. STEVENS,
LT. SWIEKATOWSKI, SECURITY DIRECTOR JOHN KIND,
WARDEN SCOTT ECKSTEIN, and CINDY O'DONNELL,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO PAY FILING FEES OUT OF RELEASE ACCOUNT (DKT. NO. 3), SCREENING COMPLAINT, AND DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT**

---

Plaintiff Rufus West, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying filing fee, dkt. no. 2, and his motion to pay filing fees out his release account, dkt. no. 3. The court also screens the complaint.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee, if he meets certain

conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 17, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $26.48. Dkt. No. 6. The court received that fee on August 30, 2018. The the court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee, and will order him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Motion to Pay Fees Out of Release Account (Dkt. No. 3)

When he filed his motion for leave to proceed without prepaying the filing fee, the plaintiff also filed a motion asking the court to allow him to pay fees out of his release account. Dkt. No. 3. He stated that he didn't have enough money in his regular account to pay the filing fee, but that he did have enough money in his release account. Id. The plaintiff also asked that if the court did not allow him to pay the full filing fee from his release account, he would like to pay the initial partial filing fee from his release account. Id. On the same day it received this motion, the court issued an order assessing the plaintiff an initial partial filing fee which, as stated above, he has paid. Thus, the plaintiff's request as it relates to payment of the initial partial filing fee from his release account is moot.

Although a court may can order a prison to allow an inmate to use funds from his release account to pay the initial partial filing fee, the PLRA does not

2

require the court to allow an inmate to use release account funds to pay the balance of the filing fee. See 28 U.S.C. §1915(b). Once a plaintiff has paid the initial partial filing fee, the PLRA requires the inmate to pay the balance by making payments equal to "twenty percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. §1915(b)(2). "Nothing in this language can be interpreted as congressional intent that prisoners deplete savings or release account balances in order to pay off their filing fee debts." Carter v. Bennett, 399 F. Supp. 2d 936, 937 (W.D. Wis. 2005). This makes sense. "The purpose of . . . release accounts is to ensure 'that the inmate has sufficient funds when released from the institution to purchase release clothing, out-of-state transportation, and other items and services needed upon release." Doty v. Doyle, 182 F. Supp. 2d 750, 751 (E.D. Wis. 2002) (quoting §DOC 309.02(18). If an inmate could use his release account to pay $350 filing fees for filing federal lawsuits, it would defeat the purpose of the release account for many inmates. Initial partial filing fees are small amounts, usually not enough to deplete a release account. But $350 would make a serious dent in, if not deplete, an inmate's release account balance. Given that, the court will deny the plaintiff's request to pay the balance of the $350 filing fee from his release account. He can pay it over time as prescribed by the PLRA.

### III.     Screening the Plaintiff's Complaint

    A.     *Federal Screening Standard*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a

governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   *The Plaintiff's Allegations*

The plaintiff is incarcerated at the Green Bay Correctional Institution. Dkt. No. 1 at 1. He is suing Captain Baumann, Captain Stevens, Lieutenant Swiekatowksi, Security Director John Kind and Warden Scott Eckstein, all of

4

whom work at Green Bay. Id. The plaintiff also sues Cindy O'Donnell, who allegedly was the Wisconsin Department of Corrections' (DOC) security designee at the time of the events he describes. Id. at 2. The plaintiff claims that the defendants retaliated against him after he complained that the DOC was not following a settlement agreement it entered into in a federal case the plaintiff litigated in the Western District of Wisconsin.

1.  Settlement Agreement

The plaintiff alleges that on June 27, 2016, he entered into a settlement agreement with the State of Wisconsin, the DOC and agents of those entities in his federal case, West v. Grams, Case No. 11-cv-687-slc (W.D. Wis.). Dkt. No. 1 at 3. According to the plaintiff, as part of the settlement agreement, the defendants agreed that regularly-scheduled congregate religious programming would not be cancelled for not having a community volunteer or DOC Chaplain of that faith available to lead the event. Id. The settlement agreement allegedly required prison officials and DOC institutions to post a memorandum in the library and chapel (or other central location) by September 21, 2016, and for a term of six months after, notifying inmates that routinely-scheduled congregate religious programming would not be canceled for the lack of having a community volunteer or DOC Chaplain available to lead the event. Id.

The plaintiff alleges that before January 3, 2017, he provided evidence showing that as of September 21, 2016, "the Memo had not been posted in some of the proper locations as required by the Agreement." Id. at 4. He also alleges that before January 3, 2017, he "provided evidence showing that since

5

September 22, 2016, routinely-scheduled congregate religious programs including Talim study groups at Green Bay Correctional Institution have been canceled in some or all DOC institutions due to the unavailability of a DOC Chaplain or volunteer." Id. He does not say to whom he provided this evidence.

### 2. Temporary Lock-Up and Conduct Report

The plaintiff alleges that on January 3, 2017, he was summoned from his job in the Bathhouse to the Rotunda where prison staff "arrested" him and placed him in temporary lock-up (TLU) pending investigation into a charge of group resistance and petitions. Id. Once at lock-up, staff allegedly strip-searched the plaintiff. Id. at 4-5. The plaintiff alleges that several minutes later, another inmate, Darin Cobb, was placed in the TLU cell with him pending investigation into a similar charge of group resistance and petitions. Id. at 5.

The plaintiff alleges that on January 9, 2017, the investigation into the plaintiff and Cobb concluded, and the plaintiff "was found not to have participated in any 'group resistance and petitions.'" Id. at 6. He alleges, however, that defendants Kind and Eckstein allegedly refused to release the plaintiff from TLU back to general population. Id. The plaintiff alleges that Kind and Eckstein reviewed his retention on TLU every seven days (on January 11 and January 18) and that they kept him on TLU even though they knew that he was not involved in any group resistance and petitions. Id.

On January 9, 2017, defendant Stevens allegedly issued the plaintiff a conduct report (CR 2922467), claiming that on December 30, 2016, both the plaintiff and Cobb stood before a group of inmates and led the group by

answering questions during the Islamic Jumah service in the Chapel. Id. The conduct report also allegedly charged that the plaintiff "stated that per Mazin al-Shakhely (the volunteer) either he or Cobb would be giving the Khutba [sermon] from that point on." Id. According to the plaintiff, the conduct report states that Cobb stood up next to Mazin, answered questions, and stated "that it doesn't matter if you're 2-4, 7-4, 22-12 you should know Jumah it is why we are here." Id. The plaintiff alleges that the conduct report indicated the numbers referred to gangs, also known as security threat groups, and by making this statement, "Cobb implied that the Jumah service is for participating in security threat group gatherings; 303.24." Id. According to the plaintiff, the conduct report ended:

> Per the Religious Policy, inmates are not allowed to lead groups at any time; 303.28. Volunteer Mazin al-Shakhely was present for this service and leads it. He did not give permission for West or Cobb to lead this service; 303.31. Mazin said that he asked these two inmates to let him know what were the issues facing the Islamic inmates at GBCI so that he could better prepare his Khutba's.

Id. at 6-7. The plaintiff alleges that defendant Stevens issued a conduct report against Cobb with the same allegations. Id. at 7. Defendant Stevens allegedly charged the plaintiff and Cobb with violating prison rules 303.28 (Disobeying order) and 303.31 (Lying), and he charged Cobb with an additional charge of 303.24 (Group Resistance and Petitions). Id.

The plaintiff alleges that on January 11, 2017, defendant Baumann stated that both conduct reports would be designated as "Major Offenses" under 303.71(2). Id. He also alleges that none of the charges are designated as Major Offenses under 303.71(2). Id.

7

The plaintiff says that on January 17, 2017, Ms. Gerrits visited the plaintiff and Cobb at their cell and said that she had been assigned as their advocates for the hearings on their conduct reports. Id. at 8. She allegedly gave them each a witness form to fill out and told them to turn it in that night. Id. The plaintiff allegedly turned his in that night by passing it to an officer during evening medication pass. Id. He states that he requested two witnesses who were present at the December 30, 2016 Islamic Services, inmate Agustin Velez and Correctional Officer Frappier. Id.

The plaintiff alleges that on January 19, 2017, his due process hearing on the conduct report took place in front of defendant Swiekatowski. Id. at 9. Swiekatowski allegedly denied the plaintiff's requests for witnesses because "Security" claimed that they did not timely receive his request. Id. (The plaintiff states that he later found out that "Security" was Swiekatowski. Id. at 14.) Cobb allegedly had his due process hearing on the same day. Id. at 10.

The plaintiff alleges that he received his due process hearing results on January 30, 2017, and that he was found guilty of the charges. Id. at 11. Under "Reason for Decision," Swiekatowski allegedly wrote:

> I considered the inmate statement, conduct report, DOC-2366 and staff representative statement. No known conflict of interest. I find the inmate guilty of 303.28 and 303.31 as I believe it is more likely than not the inmate and another got up in front of the group and proclaimed that they would be giving the Khutba as stated in the report. Capt. Steven reports the inmates did not have permission to do so. DAI 309.61.01 states 'Under no circumstances are inmates allowed to lead services.'

Id. The plaintiff alleges that Swiekatowski gave him 120 days disciplinary separation considering the "Risk of institution/knowledge of violation." Id.

8

The plaintiff allegedly appealed the disposition, raising multiple issues on appeal. Id. at 11-14. Defendants Eckstein and O'Donnell allegedly affirmed "Lt. Swiekatowski's, Capt. Baumann's, Kind's, and Eckstein's decisions." Id. at 14.

The plaintiff alleges that he challenged the findings of guilt on the conduct report via a writ of certiorari in Dane County Circuit Court, West v. Epstein, Case No. 17-cv-1564. Id. at 20. According to the plaintiff, the court concluded that the defendants violated the plaintiff's constitutionally-mandated right to present witnesses and remanded the conduct report back to the defendants for a re-hearing with the plaintiff's witnesses. Id. at 21.

The plaintiff asserts that at the May 25, 2018 rehearing, the hearing officer found him not guilty of all the charges and dismissed the conduct report. Id. at 21-22. The plaintiff alleges that in his reasons for decision, the hearing officer stated in part:

> I reviewed the conduct report, witnesses' statement, the evidence, the offender's statement and the staff representative statement. No conflict interest known. Conduct report states inmate West an [sic] another inmate lead [sic] a Jumu'ah service in the chapel. West stood up and stated that per Mazin-al-Shaklely told him he would be giving the Khutbah from that point. Per religious policy inmate are not allowed to lead groups.
>
> Inmate West denies these allegations and states he was asked by Mazin to answer questions.
>
> Witness's [sic] statements were considered and prove West was obeying a request from the volunteer to answer questions to provide better feedback on how to better the Khutbah.
>
> I find inmate West not guilty of the above charges, as his witness's [sic] statements provided clarification that West was requested by the volunteer Mazin-al-Shakhely to stand in front of the group to answer questions.

9

Id. at 22-23.

### 3. Job Applications

The plaintiff alleges that after his release from segregation on the conduct report, aumann refused to process his job applications. Id. at 18. As a result, the plaintiff could not get a job at Green Bay, despite being sought after by many staff who either knew him to be a highly qualified worker from when he used to work in the Bathhouse or because he has a well-known work reputation. Id. The plaintiff alleges that Baumann used the conduct report to deny staff members' applications to hire the plaintiff in several areas, from March 2017 to January 2018. Id. at 18-19.

### 4. Strip Searches

The plaintiff alleges that Baumann caused him to be strip-searched twice in five days, on May 11 and May 15, 2018, when he ordered a "rookie Correctional Officer" to strip search the plaintiff on May 11, knowing that the plaintiff's cell hall would be subject to a strip search four days later. Id. at 20.

### 5. Parole and Program Review Committee

The plaintiff alleges that on January 12, 2017, the parole board came to Green Bay for the plaintiff's scheduling parole hearing. Id. at 7. It issued a decision for a "two-month defer" because the plaintiff was in TLU. Id. The plaintiff alleges that at his March 23, 2017 parole hearing the parole commissioner recommended to "Defer to MR-PMR (presumably, mandatory release)" because the plaintiff's institutional conduct and program participation had not been satisfactory. Id. at 17. The plaintiff alleges that the parole

commissioner commented that the plaintiff's institution adjustment was not acceptable and cited to his January 2017 conduct report. Id.

The plaintiff says that on January 24, 2017, he received a decision from the Program Review Committee stating that it would retain him in maximum custody at Green Bay because he had been given 120 days in segregation. Id. at 11.

### 6. The Plaintiff's Claims

The plaintiff claims that as a direct result of his "complaint filings" while he was proving that the defendants had violated the state-wide settlement agreement, and in an effort to prevent the plaintiff from engaging in said constitutionally protected activities, the defendants retaliated against him by:

- Snatching him out of General Population from his job and locking him up on TLU under the guise of "pending an investigation for group resistance and petitions" when there never existed any evidence alleging that the plaintiff was engaged in "group resistance and petitions";

- Refusing to release him from TLU, which resulted in the plaintiff being locked up on TLU from January 3, 2017 to January 19, 2017;

- Depriving him of his right to call witnesses that the defendants knew from the plaintiff's written statement that he submitted along with his witness request form that the plaintiff's witnesses would

provide evidence that would undermine Capt. Stevens' fabricated allegations in the CR;

- Fabricating allegations in CR No. 2922467 that they knew had no basis in fact;

- Knowingly classifying the CR as a "Major" under the guise that the charges were listed as major offenses under DOC 303.71(2) when they knew that they weren't, and then refusing to acknowledge this after the plaintiff pointed it out to them;

- Using evidence unrelated to the charges against the plaintiff to find him guilty of the charges;

- Finding the plaintiff guilty of the charges in the CR even though there's no evidence in the CR that supports that he violated the charged rules, and punishing him with 120 days in the hole;

- Refusing to intervene on the plaintiff's behalf after he brought these injustices to their attention;

- Refusing to approve the plaintiff for a prison job under the guise of the CR;

- Singling the plaintiff out for strip searches; and

- Punishing him for answering questions.

Dkt. No. 1 at 23-24.

The plaintiff also claims:

> As a result of the Defendants' retaliatory actions against Muslim, he was prevented from monitoring and reporting whether the Defendants were in compliance with the settlement agreement

> in the high-profile case Rufus West a/k/a Mansa Lutalo Iyapo, Case No. 11-cv-687 because he was locked up; Muslim further abandoned such monitoring once he was released from the hole out of fear that such activity would result in the Defendants repeating their misconduct against him. Muslim also suffered the humiliation of being strip-searched three times, losing his job, losing his single cell, being denied parole as well as any opportunity for release on parole prior to his PMR, and the almost certainty that he will be held years beyond his PMR; Muslim has also suffered from being denied a transfer to a medium camp; Muslim has also suffered at least $700.00 or the cost of litigating his writ of certiorari in Rufus West a/k/a Muslim Mansa Lutalo Iyapo v. Eckstein et al. Case No. 17-cv-1564; Muslim also suffered from, and continues to suffer from emotional distress, loss of sleep, anxiety, and excruciating headaches.
>
> As a result of the Defendants depriving Muslim of his right to call witnesses/produce evidence for his hearing, he suffered from adverse conditions of confinement, i.e., loss of his single cell and job, denial of transfer to a medium prison, denial of parole and the almost certainty that he will be imprisoned beyond his release date; two strip searches; denied Jumu'ah and Ta'lim at least 11 times, sentenced to 120 days in the hole; denial of jobs, emotional distress, loss of sleep, anxiety, excruciating headaches and at least $700.00 to litigate the writ of certiorari.

Id. at 24-25.

The plaintiff claims that the defendants' actions violated his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments. Id. at 25. He seeks injunctive relief, compensatory damages, and punitive damages. Id.

C. *The Court's Analysis*

To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in

13

the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

Under the first element, the filing of a non-frivolous prison grievance is a constitutionally protected activity supporting a First Amendment violation, as are oral complaints about prison conditions. Daugherty v. Page, ___ F.3d ___, 2018 WL 4938968, at *3 (7th Cir. Oct. 12, 2018) (citing Perez, 792 F.3d at 783; Pearson v. Welborn, 471 F.3d 732, 740 (7th Cir. 2006)). The plaintiff has not satisfied this element. He alleges only that he "provided evidence" that the settlement agreement had not been followed. Dkt. No. 1 at 4. He does not state what evidence he provided, to whom he provided it or when he provided it. Later in the complaint, the plaintiff references "complaint filings" that he made while proving that the defendants had violated the settlement agreement. Id. at 23. But the plaintiff did not make this reference in the portion of his complaint where he talks about providing evidence, and this vague reference does not provide the who, what, when evidence that is missing from his claim.

Based on the plaintiff's failure to allege a specific constitutionally protected activity, he has not satisfied the first element of a retaliation claim. The court also finds it difficult to determine whether the plaintiff has linked any of the defendants he has named to any evidence he provided that the settlement agreement had not been followed. Is the plaintiff alleging that the defendants in this case did not follow the settlement agreement, that he "provided evidence" that they had not followed the settlement agreement, and

that they then retaliated against him for providing evidence of their failure to follow the agreement? Or is he claiming that *other* DOC staff did not follow the settlement agreement and the defendants in this case retaliated against him for providing evidence about the other staff members' failures? Or is he alleging something else altogether?

The plaintiff mentions the Fourteenth Amendment, which protects a citizen's right to due process. In the prison disciplinary context, due process requires that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decision maker, and a written explanation supported by at least 'some evidence' in the record, for any disciplinary action taken." Langstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted). The plaintiff's allegations appear to raise a due process claim against Swiekatowski for allegedly denying him the opportunity to present witnesses at the first hearing, resulting in 120 days in segregation. It is not clear whether he means to argue that any of the other defendants violated his Fourteenth Amendment right to due process, and if so, which ones.

The plaintiff's remaining allegations appear to be tied to his retaliation claim. For example, the plaintiff's claim that Baumann failed to process his job applications, standing alone, does not state a constitutional violation. Soule v. Potts, 676 Fed. App'x 585, 586 (7th Cir. 2017) ("The Constitution does not give prisoners any substantive entitlements to prison employment."); DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000) (observing that prisoners have no

constitutionally protected "liberty or property interest in their jobs"). The court assumes, then, that the plaintiff is alleging Bauman didn't process his job applications in retaliation for his providing some evidence to someone at some time regarding someone's failure to follow the settlement agreement. The plaintiff has a protectible liberty interest in parole on his mandatory release date. See Felce v. Fiedler, 974 F.2d 1484, 1491-92 (7th Cir. 1992). But he doesn't appear to have made any claims against anyone regarding his parole and he does not allege that he has been incarcerated past his mandatory release date; the court cannot tell what the plaintiff means to allege regarding parole or his MR.

Regarding his allegations that he was subject to strip searches, the plaintiff does not appear to allege that the searches themselves violated the Constitution—he mentions the Fourth Amendment (which protects citizens from unreasonable searches and seizures) and the Eighth Amendment (which protects citizens from cruel and unusual punishment by state actors); is the plaintiff claiming that the extra strip searches violated the Fourth or Eighth Amendments? How? It seems to the court instead that the plaintiff is alleging that Baumann subjected him to extra strip searches in retaliation for his providing information to someone at some point about someone's failure to follow the settlement agreement.

The court will allow the plaintiff to file an amended complaint clarifying his retaliation claim. When writing the amended complaint, the plaintiff should provide the court with enough facts to answer to the following questions: 1)

16

Who violated his constitutional rights? 2) How did each person violate his rights? 3) Where did each person violate his rights? and 4) When did each person violate his rights? The plaintiff's complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did to violate the plaintiff's rights.

The court is enclosing a copy of its complaint form and instructions. The plaintiff should write the word "AMENDED" in front of the word "COMPLAINT" at the top of the first page, and then put the case number for this case—18-cv-1277—in the field for "Case Number." He must list the names of all the defendants in the caption of the complaint. He must use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If he does not have enough room on the complaint form, the plaintiff may use up to five additional sheets of paper (putting page numbers on each additional page), double-spaced. The amended complaint takes the place of the prior complaint, and must be complete in itself. The plaintiff cannot simply say, "Look at my first complaint for further information." See <u>Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84</u>, 133 F.3d 1054, 1056-57 (7th Cir. 1998).

If the plaintiff files the amended complaint by the deadline the court sets below, the court will screen it under 28 U.S.C. §1915A.

**IV. Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion to pay filing fees out of release account. Dkt. No. 3.

The court **ORDERS** that the plaintiff shall file an amended complaint that complies with the instructions in this decision in time for the court to receive it by the end of the day on **February 22, 2019**. If the plaintiff does not file the amended complaint in time for the court to receive it by the end of the day on February 22, 2019 (or ask the court for more time before that date), the court may dismiss the case for failure to diligently pursue it under Civil Local Rule 41.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $323.52 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin this 31st day of January, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**