UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RUFUS WEST,

                Plaintiff,

v.                                                   Case No. 18-cv-1277-PP

CAPT. BAUMANN, LT. SWIEKATOWSKI,
CAPT. STEVENS, SECURITY DIRECTOR JOHN KIND,
WARDEN SCOTT ECKSTEIN, and CINDY O'DONNELL,

                Defendants.

## **AMENDED** (see p. 16) ORDER GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT (DKT. NO. 9) AND SCREENING AMENDED COMPLAINT

        Plaintiff Rufus West, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. He also asked the court to allow him to proceed without prepaying the filing fee, dkt. no. 2, and asked the court to authorize him to pay fees out of his release account, dkt. no. 3. Without reviewing the plaintiff's extensive filing history, the court assessed the plaintiff an initial partial filing fee, dkt. no. 6, which he paid, and the court granted his motion to proceed without prepaying the fee, dkt. no. 8. While the court believes the plaintiff's history of filings is abusive, and while both Judge Randa and the Seventh Circuit held over ten years ago that the plaintiff had accrued three "strikes," the court nonetheless will screen the amended complaint.

## I. The Plaintiff's Litigation History

The Wisconsin Department of Corrections Inmate Locator web site indicates that the plaintiff has been in the custody of the Department of Corrections since April 1992. https://appsdoc.wi.gov/lop/detail.do (last visited February 28, 2020). The plaintiff has asserted in other litigation that he's been in custody since 1994.

Since April 1996, the plaintiff has filed fifteen prisoner lawsuits in the Eastern District of Wisconsin. West v. Cole, Case No. 96-cv-414 (seven defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Wroblewski, Case No. 96-cv-665 (four defendants; plaintiff asked to proceed without prepaying the filing fee); West v. McCaughtry, Case No. 97-cv-70 (fifty-five defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Litscher, Case No. 02-cv-363 (fifty-two defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Hautamaki, Case No. 03-cv-17 (eight defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Litscher, Case No. 03-cv-238 (one-hundred six defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Overbo, Case No. 03-cv-658 (thirty-two defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Kussmaul, Case No. 06-cv-68 (ninety defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Endicott, 06-cv-763 (thirty-seven defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Hallet, Case No. 07-cv-624 (fifteen defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Kingland,

2

Case No. 14-cv-1146 (one defendant; plaintiff asked to proceed without prepaying the filing fee); West v. Kind, Case No. 17-cv-482 (nine defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Baumann, 18-cv-1277 (six defendants; plaintiff asked to proceed without prepaying the filing fee); West v. Elsinger, 20-cv-281 (five defendants; plaintiff asked to pay filing fee out of release account); and West v. Swietkatowki, Case No. 20-cv-282 (four defendants; plaintiff asked to pay filing fee out of release account). As the above indicates, in all but one of the fifteen suits, the plaintiff sued multiple defendants. He has sued the same defendants numerous times. In most of the complaints, he has brought multiple claims. In all but the two most recent suits, he asked the court to allow him to proceed without prepaying the filing fee.

The Prison Litigation Reform Act requires incarcerated plaintiffs to pay the full civil filing fee. 28 U.S.C. §1915(b)(1). It provides, however, that if the prisoner submits an affidavit showing that he can't pay the full filing fee at the beginning of the case, the court may allow the inmate to proceed without prepaying the fee. 28 U.S.C. §1915(a)(1). If the court agrees that the prisoner can't afford to prepay the filing fee, the court must assess the prisoner an "initial partial filing fee," then require the prisoner to pay the balance of the filing fee over time. 28 U.S.C. §1915(b). A court cannot prohibit a prisoner from filing a suit solely because he doesn't have the funds to pay the initial partial filing fee. 28 U.S.C. §1915(b)(4). But if a prisoner brings three or more lawsuits that were "dismissed on the grounds that [they were] frivolous, malicious, or

3

fail[ed] to state a claim upon which relief may be granted," he is prohibited from proceeding without prepaying the filing fee unless he can show that he is "under imminent danger of serious physical injury." 28 U.S.C. §1915(g). This is called the "three strikes" rule.

On November 9, 2007—after the plaintiff had filed nine of the above fifteen lawsuits—the Seventh Circuit decided George v. Smith, 507 F.3d 605 (7th Cir. 2007). The plaintiff in George had filed a "sprawling complaint" naming twenty-four defendants, "charg[ing] some defendants with failing to provide adequate medical care, others with censoring his mail, yet others with mishandling his applications for parole, and so on." Id. at 606. The Seventh Circuit explained that the district court should not have allowed the plaintiff to proceed on such a "mishmash of a complaint," noting that Fed. R. Civ. P. 18(a) does not allow a plaintiff to join unrelated claims against unrelated defendants. Id. at 607. The court stated that unrelated claims against unrelated defendants must be filed in different lawsuits, "not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." Id. (citing 28 U.S.C. §1915(g)). The court found that

> George was trying not only to save money but also to dodge that rule. He hoped that if even 1 of his 50 claims were deemed non-frivolous, he would receive no "strikes" at all, as opposed to the 49 that would result from making 49 frivolous claims in a batch of 50 suits. The district judge likewise assumed that a single non-frivolous

4

claim in a blunderbuss complaint makes the suit as a whole non-frivolous.

Id. The court instructed that "[w]hen a prisoner does file a multi-claim, multi-defendant suit, the district court should evaluate each claim for the purpose of § 1915(g)." Id.

At the time the Seventh Circuit issued the George decision, West v. Hallet, Case No. 07-cv-624 was pending before Judge Rudolph T. Randa. As he'd done in all his prior cases, the plaintiff had asked Judge Randa to allow him to proceed without prepaying the filing fee; Judge Randa had assessed him an initial partial filing fee, and the plaintiff had paid it. Id. at Dkt. Nos. 2, 3. In the wake of the George decision, however, Judge Randa reviewed the plaintiff's prior cases. He concluded that the plaintiff had had eight claims dismissed in three prior cases as frivolous or for failure to state a claim. Id. at Dkt. No. 4. Accordingly, Judge Randa concluded that the plaintiff had accumulated more than three strikes, denied his motion to proceed without prepaying the filing fee and ordered the plaintiff to pay the balance of the filing fee in thirty days. Id. When the plaintiff didn't pay the balance of the filing fee in thirty days, Judge Randa dismissed the case. Id. at Dkt. No. 7.

The plaintiff appealed. Id. at Dkt. No. 9. Judge Randa denied his request to proceed without prepaying the appellate filing fee. Id. at Dkt. No. 16. The Seventh Circuit subsequently dismissed the appeal because the plaintiff didn't pay the appellate filing fee. Id. at Dkt. No. 17.

Around the same time Judge Randa denied the plaintiff's motion to proceed without paying the filing fee in Case No. 07-cv-624, he granted

summary judgment in favor of the defendants and dismissed West v. Overbo, Case No. 03-cv-658 at Dkt. Nos. 115, 116. The plaintiff appealed, id. at dkt. no. 119, and asked to appeal without prepaying the appellate filing fee, id. at dkt. no. 120. Judge Randa denied that motion for the same reason he denied the plaintiff's motion in Hallet, reiterating that the plaintiff had incurred more than three "strikes." Id. at Dkt. No. 125. The plaintiff didn't pay the appellate filing fee, and the Seventh Circuit dismissed the appeal. Id. at Dkt. No. 127.

Several months later, Judge Griesbach granted summary judgment for the defendants and dismissed West v. Endicott, Case No. 06-cv-763 (at Dkt. Nos. 120, 121). The plaintiff appealed, id. at dkt. no. 122, and asked to appeal without prepaying the appellate filing fee, id. at dkt. no. 124. It appears that Judge Griesbach was not aware of Judge Randa's order finding that the plaintiff had three strikes, because he required the plaintiff to file a copy of his prison trust account. Id. at Dkt. No. 130. But the *defendants* were aware of Judge Randa's order, and brought it to Judge Griesbach's attention, asking that he deny the plaintiff's motion to appeal without prepaying the fee. Id. at Dkt. No. 131. Noting that "[s]trikes are incurred not just for frivolous lawsuits but for each count that fails to state a claim or is frivolous," Judge Griesbach denied the plaintiff's motion and ordered him to pay the balance of the filing fee within fourteen days or face dismissal. Id. at Dkt. No. 133.

The plaintiff objected that he'd never incurred three strikes, saying that if he had, the court "would not had allowed [him] to proceed in forma pauperis on this case on 8-10-06." Id. at Dkt. No. 134. On February 8, 2010, the Seventh

6

Circuit denied the plaintiff's motion for leave to proceed without prepaying the appellate filing fee. Id. at Dkt. No. 138. The court stated that it had

> carefully reviewed the request for leave to proceed as a pauper on appeal, the appellant's motion filed under Federal Rule of Appellate Procedure 24, the district court's order pursuant to 28 U.S.C. § 1915(a)(3) certifying that the appeal was filed in bad faith, and the record on appeal. A review of this case indicates that appellant Rufus West is not permitted to proceed in forma pauperis under 28 U.S.C. § 1915(g). The appellant his, on three or more prior occasions, brought an action or appeal in which claims were dismissed on the grounds that they were frivolous or fails to state a claim upon which relief may be granted. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007). The district court properly noted strikes in three cases. *West v. Hautamaki*, No. 03-C-0017 (E.D. Wis. Apr. 7, 2003) (order dismissing certain equal protection, due process, First Amendment, and Eighth Amendment claims); *West v. Kussmaul*, No. 06-C-0068 (E.D. Wis. May 31, 2006) (order dismissing 19 of 24 defendants and all but his Eighth Amendment claims); *West v. Endicott*, 06-C-763 (E.D. Wis. Aug. 10, 2006) (order dismissing 12 of 37 defendants and a number of claims). West challenges the court's *George* decision in his PLRA memorandum and argues that the dismissal of only certain defendants or certain claims should not result in a strike. West, however, has a history of bringing numerous complaints against a vast number of defendants and asserting a wide assortment of claims, which [is] precisely the type of strategy *George* intended to stop. West's strategy of including multiple, unrelated claims is clearly designed to avoid the three-strikes bar.

Id. at 2.

So—in February 2008, Judge Randa concluded that the plaintiff had accrued three strikes, and in February 2010, the Seventh Circuit concluded that he had accrued three strikes.

Several months later, however, the Seventh Circuit decided Turley v. Gaetz, 625 F.3d 1005 (7th Cir. 2010). In Turley, the district judge had read George the same way Judges Randa and Griesbach had read George—"to hold that a dismissal of even one claim on a ground enumerated in § 1915(g)—even

7

when other claims survive—is enough to qualify the entire lawsuit as a strike." Id. at 1010. The Seventh Circuit, after extensive discussion of George, clarified that "a strike is incurred under § 1915(g) when an inmate's case is dismissed *in its entirety* based on the grounds listed in § 1915(g)." Id. at 1012. The court since has reiterated that holding in Vaughn v. Ind. Dept. of Corr., 502 F. App'x 579, 581 (7th Cir. 2012).

Under Turley, it appears that the plaintiff has not accrued three strikes, because he has not had three *cases* dismissed for being frivolous, malicious or failing to state a claim. Even though Judge Randa assessed the defendant three strikes, "a later district court may not defer to an earlier district court's contemporaneous decision to label a dismissal as a strike." Wallace v. Baldwin, 895 F.3d 481, 485 (7th Cir. 2018). In reaching this conclusion, the Seventh Circuit quoted the United States Court of Appeals for the D.C. Circuit, which held that

> [t]he PLRA requires the district court in the current case to bar a prisoner from proceeding in forma pauperis only if that district court determines that a prisoner has three strikes. District courts must *independently* evaluate prisoners' prior dismissals to determine whether there are three strikes. A district court may not relinquish that statutory responsibility simply because a prior dismissing court has labeled a dismissal as a strike.

Fourstar v. Garden City Grp., Inc., 875 F.3d 1147, 1153 (D.C. Cir. 2017). This court confesses some discomfort with the fact that the *Seventh Circuit* also has assessed the plaintiff three strikes; while this court is not bound by the decisions of other judges in the Eastern District, it *is* bound by the decisions of

8

the Seventh Circuit. But given this court's obligation to independently determine whether the plaintiff has accrued three strikes, and the Seventh Circuit's substantive rulings in Turley and Vaughn, the court cannot find that the plaintiff has accrued three strikes.

The court assessed the plaintiff an initial partial filing fee of $26.48, dkt. no. 6, and the court has received that fee. That is why the court granted the plaintiff's motion to proceed without prepaying the filing fee. Dkt. No. 8. The court recounts the plaintiff's history, however, because the plaintiff has used a considerable amount of the court's limited resources and continues to do so, despite having several claims dismissed as frivolous or failing to state a claim.

## II. Motion for an Extension of Time (Dkt. No. 9)

The court had ordered the plaintiff to file an amended complaint by February 22, 2019. Dkt. No. 8. On March 4, 2019—about ten days after the deadline—the court received from the plaintiff a motion to extend that deadline. Dkt. No. 9. He indicated that he'd tried to send the motion to the court on February 21, 2019, but that it had been returned to the prison librarian. Id. at 1. The plaintiff also indicated that the librarian told him that the facility where he is incarcerated "doesn't do e-filing," so he had to mail his pleadings to the court. Id. The court received the amended complaint three days later. Dkt. No. 10. The court will grant the plaintiff's motion and will deem the amended complaint timely filed. The amended complaint the court received on March 7, 2019, dkt. no. 10, is the operative complaint.

9

### III. Screening

    A. <u>Federal Screening Standard</u>

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. <u>Buchanan-Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Vill. of N. Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004)); <u>see also</u> <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980). The court gives a pro se plaintiff's allegations, "however inartfully pleaded," a liberal construction. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

B. The Plaintiff's Allegations

Between September 2016 and February 2017 (the period during which the allegations in the complaint arose), the plaintiff was incarcerated at the Green Bay Correctional Institution. Dkt. No. 10. He has sued Capt. Baumann, Capt. Stevens, Lt. Swiekatowski, Security Director John Kind, Warden Scott Eckstein and Cindy O'Donnell; the first five defendants were working at Green Bay during the relevant period, and O'Donnell was, according to the plaintiff, "the Security Designee of the Department of Corrections." Id. at 2.

The plaintiff alleges that in West v. Grams, Case No. 11-cv-687-slc (W.D. Wis.), he and the defendants reached a settlement that all Wisconsin Department of Corrections (DOC) staff would not cancel any religious services because of the unavailability of an outside volunteer and that a memo stating that fact be posted throughout Green Bay, in the library, chapel and common areas. Id. at 3. The plaintiff says that the settlement went into effect on September 21, 2016. Id. The plaintiff alleges that on September 14, 2016 (a week before the settlement went into effect, it appears), the administrator of the Division of Adult Corrections "informed all DOC staff, including Baumann, Kind and Stevens, about the religious cancellations and memo-posting." Id. at 4.

The plaintiff alleges that on November 8, 2016, he filed an inmate complaint stating that DOC staff were "not in compliance with the settlement via cancellations of Talim services." Id. at 4. He says that on December 8, 2016, the inmate complaint examiner (ICE) addressed that grievance, saying that

11

"[r]eligious study groups were temporary suspended due to staffing levels." Id. The ICE said that the study groups resumed on October 31, 2016, and that the plaintiff was allowed to attend Jum'ah services "during the time the study groups were suspended." Id. The examiner also said that the complaint would be shared with the office of legal counsel "to alert them to [the plaintiff's] concerns about the effect the prior cancellations may have had on his settlement agreement in the prior lawsuit." Id. The plaintiff says that the warden (Eckstein) and O'Donnell agreed with the ICE's decision. Id.

The plaintiff says in his first cause of action that because of his "monitoring and exposing the defendants' non-compliance of the settlement," on January 3, 2017, defendants Kind, Baumann and Stevens retaliated against him by having him arrested and placed on temporary lockup (TLU) "under the guise that he engaged in group resistance and petitions even though there was never anything in existence showing that he was involved in group resistance and petition." Id. The plaintiff states that, as a result of the defendants' actions, he "was subjected to a strip search, loss of Talim and Jumu'ah Services from January 4, 2017 to 1-19-17, the loss of his single cell and the inability to monitor compliance of the settlement agreement, loss of sleep, anxiety and headaches and fear of retaliation." Id.

In his second cause of action, the plaintiff alleges that January 9, 2017, defendants Kind and Eckstein decided to keep him locked up on TLU and refused to release him, even thought there was no evidence to suggest that the plaintiff engaged in any group resistance and petitions. Id. at 6. The plaintiff

12

states that, as a result of their actions, he "was denied Jumu'ah and Talim Services from 1-9-17 to 1-19-17, he was unable to monitor whether the defendants were complying with the settlement from 1-9-17 to 1-19-17, the loss of his single cell, loss of sleep, anxiety and fear of retaliation, denial of a parole hearing on or about 1-11-17, kept in TLU without due process from 1-9-17 to 1-19-17." Id.

In his third cause of action, the plaintiff asserts that on January 9, 2017, defendant Stevens retaliated against him by fabricating allegations in a conduct report that claimed that the plaintiff and another prisoner participated in illegal conduct at the chapel. Id. at 7. He also alleges that on January 11, 2017, defendants Kind and Baumann retaliated against him by illegally classifying the conduct report "major," when it could not be classified as a major. Id. The plaintiff states that as a result of the defendants' actions, he was "denied due process, he feared retaliation from the defendants, he suffered from anxiety, loss of sleep and headaches." Id. at 7-8.

Fourth, the plaintiff alleges that on January 19, 2017, defendant Swiekatowski retaliated against him by refusing to let the plaintiff's witness testify at his hearing (he does not say what kind of hearing). Id. at 8-9. The plaintiff asserts that, while Swiekatowski claimed that it wasn't retaliation, "the Dane County Court ruled that his actions were illegal about 2 years later." Id. at 9. The plaintiff states that, as a result of Swiekatowski's actions, he was convicted of the charges and punished with 120 days in the "hole." Id. at 9. The plaintiff also alleges that defendants Eckstein and O'Donnell dismissed his

13

challenge to Swiekatowski's actions. Id. The plaintiff states that, as a result of these actions, he

> was denied parole prior to his 3-4-19 PMR, he was denied release on his 3-4-19 PMR date, he was denied transfer to a medium prison on or about 1-24-17, 1-10-18, lost his job in the Bathhouse, Baumann refused to hire [the plaintiff] to work in March/April of 2017, May 17, 2017, 1-4-18, January of 2018 for a chapel job, in mid-January 2018 in the Bathhouse, and Baumann strip searched Muslim illegally on 5-11-18, [the plaintiff] also stopped monitoring the non-compliance and reporting of the settlement out of fear of retaliation, he was denied Jumu'ah and Talim about 11 times because he was in the hole, and lost about $700.00 due to certiorari fees, etc. challenging the conduct report.

Id.

For relief, the plaintiff seeks $20 million from each defendant. Id. at 10.

C. Analysis

All four of the plaintiff's causes of action sound in retaliation. To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

The plaintiff's original complaint was twenty-six pages long. Dkt. No. 1. In its screening order, the court required the plaintiff to file an amended complaint, because he didn't allege a constitutionally protected activity and didn't make clear whether he was claiming that the defendants didn't comply

14

with the settlement agreement, or whether the defendants retaliated against him for complaining about other people not following the settlement agreement, or something else. Dkt. No. 8 at 14-15. The amended complaint is eleven pages and doesn't much clarify things.

The plaintiff alleges that his monitoring of the defendants' compliance with the settlement in the 2011 case, and his filing of an inmate complaint in November 2016, caused the defendants to retaliate against him. Filing an inmate grievance is activity that is protected by the First Amendment. The plaintiff also has alleged that he suffered various deprivations that likely would chill someone from exercising his First Amendment rights—being arrested and placed in temporary lockup, being subject to false conduct reports and being prohibited from calling witnesses at what the court presumes was a disciplinary hearing.

But the plaintiff has not alleged any facts that demonstrate that his filing of the November 2016 inmate complaint was "at least a motivating factor" in any of the actions he alleges most of the defendants took. The plaintiff does not allege that anyone other than Eckstein and O'Donnell even knew about the November 2016 complaint. While it isn't clear, it appears that he alleges Eckstein and O'Donnell supported the complaint examiner's decision to refer the plaintiff's complaint to the office of legal counsel, to make sure his concerns about non-compliance with the settlement agreement were addressed. The plaintiff states no facts to indicate that Kind, Baumann, Stevens or

Swiekatowski had any idea that he'd even filed the complaint, much less that they were motivated by it when they took the actions he describes.

The plaintiff has made no allegations at all against O'Donnell, other than to say that she agreed with the ICE's decision. The plaintiff does not mention her in any of his four causes of action.

The only defendant the plaintiff claims knew about the November 2016 complaint and took action against him is Eckstein. The plaintiff alleges that Eckstein decided to keep him in temporary lockup and refused to release him even though there was no evidence that the plaintiff was involved in group resistance or petitions. This is thin—the plaintiff does not say how Eckstein knew he was in temporary lockup, or whether the plaintiff asked Eckstein to release him from temporary lockup, or how Eckstein would have known there was no evidence that the plaintiff was involved in group resistance or petitions. But at this early stage, the court will allow the plaintiff to proceed on a First Amendment retaliation claim against Eckstein.

**IV.    Conclusion**

The court **GRANTS** the plaintiff's motion for an extension of time to file the amended complaint. Dkt. No. 9.

The court **ORDERS** that the amended complaint received on March 7, 2019 is the operative complaint. Dkt. No. 10.

The court **ORDERS** that defendants Baumann, Stevens, Swiekatowski, Kind **and O'Donnell** are **DISMISSED**.

16

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendant Eckstein. The court **ORDERS** defendant Eckstein to file a responsive pleading to the amended complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for pretrial proceedings.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 10th day of March, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**